JOURNAL ENTRY and OPINION
Appellant David Francis appeals a decision by the trial court granting summary judgment in favor of Appellee Charles Deeb in a legal malpractice action. Francis assigns the following error for our review:
 WHETHER THE LOWER COURT ERRED WHEN IT GRANTED DEFENDANT DEEB'S MOTION FOR SUMMARY JUDGMENT HOLDING THAT THE STATUTE OF LIMITATIONS BEGAN TO RUN WHEN APPELLANT FIRST LEARNED THAT CHARLES DEEB WAS REPRESENTING HIM INSTEAD OF THE DATE THAT HE LEARNED THE (sic) DEEB HAD TAKEN ACTIONS TO DEFEAT HIS INDEMNIFICATION RIGHTS AND HAD MISREPRESENTED CASAMENTO'S ABILITY TO HONOR THE INDEMNIFICATION AGREEMENT?
Having reviewed the record and the legal arguments of the parties, we affirm the decision of the trial court. The apposite facts follow.
In November 1992, appellant David Francis and Joseph Casamento signed a promissory note with Everette Stephens to purchase a Tuffy Automotive Service Station in Kent, Ohio. Shortly after the purchase, Francis became seriously ill. Casamento agreed to operate the business and verbally agreed to hold Francis harmless and indemnify him for any liability to Stephens on the promissory note with Stephens. After Stephens stopped participating in the operation of the business, a corporation known as Transauto, Inc. began operating the business. The shareholders of Transauto, Inc. were Casamento and his father, Bernard. Transauto, Inc. also operated another Tuffy in Mentor, Ohio that was owned by Bernard Casamento and Robert Owens.
After taking possession of the business, Francis and Casamento learned that Stephens misrepresented the financial status and profitability of the business. They also learned that some of the equipment they believed to be included in the purchase price was missing from the business.
In November 1993, Tuffy filed suit against Transauto and the owners of the Mentor Tuffy for failure to pay rent and franchise fees. Casamento retained attorney Charles Deeb to represent Transauto, Francis, and Casamento in the suit filed by Tuffy. In December 1993, Stephens filed suit against Transauto, Francis, and Casamento for nonpayment of the promissory note for the Kent Tuffy. Stephens v. Casamento (Nov. 22, 1996), Portage App. No. 96-PA-0010, unreported. However, Francis never received service of the complaint. Casamento asked Deeb to represent Casamento and Francis in the Stephens case. Deeb filed an answer and counterclaim in the Stephens case on behalf of Casamento and Francis.
In the meantime, Casamento began having financial problems and Deeb referred him to a bankruptcy attorney. Aware that Casamento would probably file for bankruptcy protection, Deeb informed the owners of the Mentor Tuffy that he could no longer represent Casamento and Transauto in the Tuffy litigation due to the possible conflict between the interests of Casamento and Transauto and those of the other owners of the Mentor Tuffy.
Francis became aware of the Stephens lawsuit sometime in 1994 during discussions with Casamento but was not aware that he was a party to the action. In June 1995, Casamento called Francis and asked him to be a character witness in the Stephens case. Francis contacted attorney Patrick Farrell to find out if he needed to testify. On June 16, 1995, Farrell advised Francis that he was a party to the Stephens litigation and that the case was scheduled for trial on June 22, 1995.
Francis retained Farrell to represent him in the Stephens
litigation. Farrell filed a notice of appearance in the case and moved to continue the trial date. The motion to continue was denied and, on June 22, the parties began discussing a settlement of the case. Deeb told Farrell that he was in contact with potential buyers for the equipment at the Kent Tuffy and that the proceeds of the sale could be used to pay the obligation to Stephens. Due to the ongoing settlement negotiations, the trial was continued until December 14, 1995.
At trial, Casamento was represented by Deeb and Francis was represented by Farrell. At the end of trial, the trial court ruled in favor of Stephens and awarded him $46,880 in damages. The court found in favor of Stephens on the fraud counterclaim by Francis and Casamento. However, the trial court ordered a set-off of $5,350 for the missing equipment and as reimbursement for repair of defective muffler work performed by Stephens. The final judgment amount was $41,530.
Deeb filed an appeal on Casamento's behalf. No appeal was filed by or on behalf of Francis. The decision was affirmed inStephens v. Cosamento (Nov. 22, 1996), Portage App. No. 96-PA-0010, unreported. In April 1997, Casamento filed for bankruptcy protection.
On July 23, 1997, Francis filed a legal malpractice action against Casamento, Deeb, Farrell, Deeb's law firm, Farrell's law firm, and the named partners of those law firms. Francis also included a fraud claim against Deeb. Deeb moved for summary judgment on the complaint, alleging that it was barred by the one-year statute of limitations set forth in R.C. 2305.11(A). Deeb maintained that Francis' cause of action arose in June 1995 when Francis learned that he was a defendant in the Stephens
litigation, that he was personally liable for any judgment awarded to Stephens, and that there was a potential conflict in Deeb's representation of both Casamento and Francis.
Francis responded that his claim was not time-barred because his cause of action did not arise until 1997 when he learned that Casamento was having financial problems. The trial court granted Deeb's motion for summary judgment, concluding that the statute of limitations began to run when Farrell filed his notice of appearance in the Stephens litigation or, at the latest, when the trial began in December 1995. The court also found that, pursuant to Civ.R. 54(B), there was no just cause for delay. This appeal followed.
In his sole assignment of error, Francis argues the trial court erred in finding that his legal malpractice action was time-barred. The statute of limitations for legal malpractice actions is one year. R.C. 2305.11(A). The statute of limitations for a legal malpractice action commences to run "when there is a cognizable event whereby the client discovers or should have discovered that his injury was related to his attorney's act or non-act and the client is put on notice of a need to pursue his possible remedies against the attorney or when the attorney-client relationship for that particular transaction or undertaking terminates, whichever occurs later. Gatchell v.Lawyers Title Ins. Corp. (Sept. 7, 1999), Franklin App. No. 98AP-1487, unreported. See also Omni Food Fashion, Inc. v. Smith
(1988), 38 Ohio St.3d 385, 528 N.E.2d 941. A cognizable event has been defined as "an event which suffices to alert a reasonable person that his attorney has committed an improper act in the course of legal representation." Spencer v. McGill (1993)87 Ohio App.3d 267, 278, 622 N.E.2d 7. See also,Hickle v. Malone (1996), 110 Ohio App.3d 703,675 N.E.2d 48, appeal dismissed (1996), 77 Ohio St.3d 1445,671 N.E.2d 1284. A cognizable event is one which "puts the plaintiff on notice to investigate the facts and circumstances relative to his claim in order to pursue his remedies." Reinhold v. Kelly (Apr. 17, 1998), Hamilton App. No. C-970149, unreported, citing Flowers v. Walker (1992), 63 Ohio St.3d 546,549, 589 N.E.2d 1284, 1287. The client need not "be aware or suffer the full extent of his injury before there is a cognizable event" which triggers the running of the statute of limitations. Zimmie v. Calfee, Halter Griswold (1989), 43 Ohio St.3d 54,58, 538 N.E.2d 398, 402.
Francis argues his claim did not accrue until he learned that Deeb had taken actions to defeat his indemnification rights and had misrepresented Casamento's ability to honor the indemnification agreement. He argues he did not know about Casamento's financial problems until Casamento filed bankruptcy in April 1997. He also maintains that he did not know that his interests were not being protected by Deeb because Deeb kept assuring him that a sale of the equipment from the Kent store would satisfy Stephens' claim.
In his deposition, Francis stated he was aware of the Stephens
litigation as early as 1994 when Casamento mentioned it to him. (Francis Depo. at 53.) He stated that he contacted Farrell in June 1995, after Casamento asked Francis to be a character witness in the Stephens litigation. He admitted that he contacted Farrell because he was "suspicious" of Casamento and wondered why he asked Francis to appear as a character witness. (Francis Depo. at 56.) He also admitted that, in June 1995, Farrell told him he was a party to the lawsuit. (Francis Depo. at 57.) He was aware that the judgment entered in the Stephens litigation was against both Francis and Casamento personally. (Francis Depo. at 75.) He stated that, although his name was on the litigation, he believed that the sale of the Kent equipment would cover the obligation to Stephens. (Francis Depo. at 75.)
However, Farrell told Francis in June 1995 that "certainly there was an appearance of impropriety" in Deeb's actions. (Farrell Depo. at 133.) Farrell also told Francis that his indemnification agreement with Casamento would not relieve him of liability to Stephens. (Farrell Depo. at 157-158.) According to Farrell, Francis knew at least as of June 1995 and prior to the June 22, 1995 trial date that there was a potential conflict of interest between himself and Casamento. (Farrell Depo. at 162.)
Under the above facts, it is clear that, no later than June 1995, Francis was aware of facts which should have put him "on notice to investigate the facts and circumstances relative to his claim in order to pursue his remedies." Reinhold; Flowers,63 Ohio St. 3d at 549, 589 N.E.2d at 1287. Even if we accept as true Francis' claim that he wasn't aware that Casamento would not honor the indemnification agreement, Francis' awareness of a possible conflict of interest between Deeb's representation of both Francis and Casamento should have put Francis on notice to further investigate Deeb's performance as his counsel. Francis' awareness of the possible conflict of interest also renders unreasonable his decision to rely on Deeb's assurances that the obligation to Stephens would be satisfied by Casamento's sale of the Kent equipment. After having become "suspicious" of Casamento in June 1995 by his own admission, Francis should thereafter have attempted to confirm that his interests would be protected.
Accordingly, we find that the statute of limitations began to run no later than June 1995 when Farrell informed Francis of a potential conflict of interest in Deeb's representation of both Francis and Casamento. Because Francis' legal malpractice action against Deeb was not filed until July 23, 1997, it was barred by the one-year statute of limitations set forth in R.C. 2305.11(A). The trial court properly granted Deeb's motion for summary judgment. Francis' assignment of error is hereby overruled.
Judgment affirmed.
It is ordered that appellees recover of appellant their costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
TERRENCE O'DONNELL, P.J., and ANNE L. KILBANE, J., CONCUR.
 _________________________________ PATRICIA ANN BLACKMON, JUDGE