DECISION AND JOURNAL ENTRY
{¶ 1} Plaintiff-Appellant Linda Downey, individually and as Administratrix of the Estate of William S. Downey, has appealed from the decision of the Summit County Court of Common Pleas that granted Defendant-Appellee James Corrigan's motion for summary judgment. This Court affirms.
 I {¶ 2} Appellant filed suit against Appellee, her former attorney, on December 31, 2002.[1] The lawsuit was based on Appellee's prior legal representation. In July 1998, Appellant retained Appellee to represent her and the estate of her late-husband, William S. Downey ("decedent") in a medical malpractice and wrongful death action against the doctors who treated the decedent and the local hospital where he was treated. In her legal malpractice lawsuit against Appellee, Appellant claimed that Appellee failed to open an estate on behalf of the decedent within one year of his death, thereby precluding Appellant from pursuing survivorship claims against the doctors who treated the decedent and the hospital where he was treated. Appellant also claimed in her legal malpractice lawsuit that Appellee failed to have her properly appointed as the Administratrix of the decedent's estate.
 {¶ 3} According to Appellant's appellate brief, the decedent died intestate on December 25, 1997. On July 31, 1998, Appellant filed a wrongful death and medical malpractice lawsuit against the doctors who treated the decedent and the local hospital where the decedent had been treated. Litigation ensued over the next several months. However, in late 1998, Appellant sent Appellee several email messages in which she expressed her dissatisfaction with Appellee's legal representation. As a result, Appellee wrote Appellant a letter dated January 29, 1999, wherein he notified her that he could no longer represent her. The letter included an acknowledgment paragraph which stated that Appellant understood that Appellee was no longer her attorney and that Appellee had given her the entire case file related to the medical malpractice and wrongful death lawsuit against the doctors and the hospital. Appellant signed the acknowledgment clause on January 29, 1999. At the same time that Appellant received the letter from Appellee and signed the acknowledgment clause, Appellee gave her the complete case file relating to the underlying medical malpractice and wrongful death claim.
 {¶ 4} On February 2, 1999, Appellee filed a motion with the trial court to withdraw as counsel for Appellant and the estate. Said motion was granted by the trial court on March 11, 1999.
 {¶ 5} Appellant filed the underlying legal malpractice claim, to which Appellee responded on March 3, 2003. In his answer to her complaint, Appellee claimed that "his duties as an attorney were reasonably discharged during the time he was engaged by [Appellant]." He also denied any allegations of professional malpractice. On July 1, 2003, Appellee filed a motion for summary judgment. The trial court granted Appellee's motion on September 30, 2003, stating that "[Appellant's] claim of legal malpractice is time-barred by the applicable statute of limitations found in R.C. 3205.11(A) such that summary judgment is appropriate."
 {¶ 6} Appellant has timely appealed the trial court's decision, asserting one assignment of error.
 II Assignment of Error
"The trial court erred in granting summary judgment in favor of [appellee]"
 {¶ 7} In her first assignment of error, Appellant has argued that the trial court erred when it granted summary judgment in favor of Appellee. Specifically, she has argued that, contrary to the trial court's finding, the statute of limitations had not expired prior to her filing suit against Appellee on March 3, 2000. We disagree.
 {¶ 8} Appellate review of a lower court's entry of summary judgment is de novo, applying the same standard used by the trial court. McKay v. Cutlip (1992), 80 Ohio App.3d 487, 491. In a motion for summary judgment, the moving party initially bears the burden of informing the trial court of the basis for the motion and identifying portions of the record that demonstrate an absence of genuine issues of material fact as to the essential elements of the nonmoving party's claims. Dresher v. Burt
(1996), 75 Ohio St.3d 280, 292. The movant must point to some evidence in the record of the type listed in Civ.R. 56(C) in support of his motion. Id. at 292-93. Once this burden is satisfied, the nonmoving party has the burden, as set forth in Civ.R. 56(E), to offer specific facts showing a genuine issue for trial. Id. at 293. The nonmoving party may not rest upon the mere allegations and denials in the pleadings, but instead must point to or submit some evidentiary material showing that a genuine dispute over material fact exists. Henkle v. Henkle (1991),75 Ohio App.3d 732, 735.
 {¶ 9} Pursuant to Civ.R. 56(C), summary judgment is proper if:
"(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." Temple v. Wean United, Inc. (1977),50 Ohio St.2d 317, 327.
 {¶ 10} In the case at bar, Appellant has argued that the trial court erred when it concluded that her claim of legal malpractice was time-barred. Appellee, on the other hand, has argued that the statute of limitations had run and, as a result, the trial court properly determined that Appellant's claim was time-barred.
 {¶ 11} The time within which a party must bring a cause of action for legal malpractice is governed by R.C. 2305.11(A), which states that a legal malpractice claim "shall be commenced within one year after the cause of action accrued * * *." InZimmie v. Calfee, Halter Griswold (1989), 43 Ohio St.3d 54, the Supreme Court of Ohio established a two-part test to determine when the statute of limitations begins to run on a claim for legal malpractice. In Zimmie, the Court stated that:
"Under R.C. 2305.11(A), an action for legal malpractice accrues and the statute of limitations begins to run when there is a cognizable event whereby the client discovers or should have discovered that his injury was related to his attorney's act or non-act and the client is put on notice of a need to pursue his possible remedies against the attorney or when the attorney-client relationship for that particular transaction or undertaking terminates, whichever occurs later." Zimmie,
43 Ohio St.3d at syllabus.
 {¶ 12} Because the trial court based its decision to grant summary judgment in favor of Appellee on the statute of limitations, this Court must first determine when the statute of limitations began to run on Appellant's claim of legal malpractice. Based on that date, we must then determine if summary judgment was properly granted.
 {¶ 13} Appellant has advanced two arguments in support of her contention that her claim against Appellee was not time-barred. First, she has argued that the attorney-client relationship was not terminated until March 11, 1999, the date the trial court granted Appellee's motion to withdraw as her counsel. As a result, she has argued, her March 3, 2000 legal malpractice claim was filed "within one year after the cause of action accrued" and was not time-barred. R.C. 2305.11(A). Appellee has argued, however, that the January 29, 1999 letter signed by both he and Appellant terminated the attorney-client relationship on that same date and triggered the statute of limitations. As a result, he has argued, Appellant's March 3, 2000 claim for legal malpractice was filed more than one year after the cause of action accrued and was, therefore, time-barred.
 {¶ 14} "The determination of whether an attorney[-]client relationship has ended is necessarily one of fact, to be decided by the trier of fact." Sinsky v. Gatien (Aug. 30, 2000), 9th Dist. No. 19795, at 4, appeal not allowed (2001),91 Ohio St.3d 1418, citing Mobberly v. Hendricks (1994), 98 Ohio App.3d 839,843. However, if affirmative actions that are patently inconsistent with a continued attorney-client relationship are undertaken by either the attorney or the client, the question of when the attorney-client relationship has ended may be taken away from the trier of fact and decided as a matter of law. Sinsky,
supra, at 4-5; Mobberly, 98 Ohio App.3d at 843. "For a trial court to grant summary judgment on this basis, such an act must be clear and unambiguous, so that reasonable minds can come to but one conclusion from it." Mastran v. Marks (Mar. 28, 1990), 9th Dist. No. 14270, at 8; see, also, Mobberly,98 Ohio App.3d at 843.
 {¶ 15} In the instant matter, the trial court determined that the January 29, 1999 letter terminated the attorney-client relationship between Appellant and Appellee, thus leading it to conclude that Appellant's claim was time-barred. The letter, written and signed by Appellee, stated that:
"This letter will evidence the return to your possession of the file materials on your case against various physicians and medical providers on behalf of your husband for his untimely death. Further, this letter will verify that you understand that there will be conducted a pre-trial meeting with [the trial court judge] at the Summit County Court House in Akron on February [25], 1999 at 9:00 A.M. as evidenced by the attached notice. I have also delivered to you the name of an expert who may be willing to review your case at this point.
"I regret that I cannot continue to represent you and I hope that you will find another attorney to continue your case.
"Sincerely Yours,
"James G. Corrigan."
 {¶ 16} In addition to the foregoing, the letter included an acknowledgment clause. The clause was signed by Appellant on January 29, 1999, and stated that:
"I, Linda Downey[,] hereby acknowledge receipt this day of January [29,] 1999, the entire case file materials from James G. Corrigan for case No. 98CV07-3017 and further acknowledge that he will no longer represent me as my attorney. I am aware of the pre-trial date set for February [25], 1999 at 9:00 A.M. with [the trial court judge]."
 {¶ 17} This Court views the ratification of the letter and acknowledgment clause by Appellant and Appellee, respectively, as affirmative acts that unambiguously terminated the attorney-client relationship. See, Mastran, supra, at 8;Sinsky, supra, at 4-5. In addition, we view the unequivocal act of Appellee delivering the entire case file to Appellant as an additional unambiguous and affirmative act that serves as further evidence of what the letter provided, namely the immediate termination of the attorney-client relationship between Appellant and Appellee. Based on the foregoing, this Court finds that, for purposes of the Zimmie test regarding termination of the attorney-client relationship, such relationship as it existed between Appellant and Appellee was terminated on January 29, 1999.
 {¶ 18} However, this determination does not end our inquiry with regard to the instant matter. Pursuant to Zimmie, we must next determine the date on which Appellant discovered or should have discovered that her injury was related to her attorney's alleged malpractice. Appellant has argued that pursuant to Ohio's discovery rule as enunciated in Zimmie, the statute of limitations on her legal malpractice claim began to run on March 6, 1999, the date she discovered Appellee's alleged malpractice. As a result, she has argued, her March 3, 2000 claim of legal malpractice was not time-barred. Appellee has argued that, pursuant the Ohio's discovery rule as enunciated in Zimmie, the statute of limitations began to run on Appellant's claim of legal malpractice in late 1998 when Appellant sent him several email messages expressing her dissatisfaction with his legal representation.
 {¶ 19} Generally in medical malpractice claims, a cause of action accrues and the statute of limitations begins to run from the date the wrongful act occurred. Collins v. Sotka (1998),81 Ohio St.3d 506, 507. However, as enunciated in Zimmie, when applied to matters of legal malpractice, Ohio's discovery rule provides that a "cognizable event" that either should have or actually did alert the client to the fact that he might have been injured by his attorney's representation triggers the statute of limitations. Zimmie, 43 Ohio St.3d at 58. In such context, a "cognizable event" is an event that puts a reasonable person on notice "that questionable legal practice may have occurred" and that the client might need to pursue remedies against his attorney. Id.
 {¶ 20} Our review of Appellant's deposition testimony and exhibits submitted to the trial court reveals that she sent Appellee several email messages in late 1998. In her first email message, Appellant stated that "I have called for help from the federal government. * * * And as soon as I can retrieve the print out I will be taking action. This is no threat. The federal government will want to know why you withheld the money from me." In her second email message, Appellant stated that:
"If the lawsuit settled a long time ago, you should have told me. And I am not settling for any fifth of the lawsuit. You should have given the money to me to control, because [I] could have turned it into a multi million dollars. You never even [replied] to my fax last night. You had better respond this time. I am the controlling factor here and I will say what my family gets and what they [don't]. Do not play games with me."
 {¶ 21} When asked in her deposition why she believed that the lawsuit had settled and that Appellee was withholding settlement funds from her, she stated that "I just had the impression. I felt that way because he wasn't telling me anything."
 {¶ 22} Appellant has argued that "[it] strains logic to conclude that [Appellant] should have immediately `discovered'" that Appellee had failed to open an estate on behalf of the decedent as there was "no `cognizable event' which would have immediately put her on notice of such an unexpected and arcane error." We find such an argument untenable in light of current law from the Supreme Court of Ohio.
 {¶ 23} In Zimmie, the Supreme Court of Ohio stated that legal and medical malpractice claims should use the same standard to determine when a "cognizable event" has occurred and thus when the statute of limitations has started to run. Zimmie,43 Ohio St.3d at 57. A critical element of the Court's rationale inZimmie was first articulated in the medical malpractice caseAllenius v. Thomas (1989), 42 Ohio St.3d 131. In Allenius,
the court held that an injured person need not be aware of the full extent of his injuries before there is a recognized "cognizable event" triggering the statute of limitations. Id. at 133-134; see, also, Zimmie, 43 Ohio St.3d at 58. Rather, the court felt that once the "cognizable event" had occurred, the person was on notice of "the necessity for investigation and pursuit of her remedies * * *." (Citations omitted.) Allenius,42 Ohio St. at 134.
 {¶ 24} In Allenius, the higher court further explained that a cognizable event is one that:
"[D]oes or should lead the patient to believe that the condition of which the patient complains is related to the medical procedure, treatment or diagnosis previously rendered
to the patient and where the cognizable event does or should place the patient on notice of the need to pursue his possible remedies." (Emphasis added; Alterations added.) Allenius,42 Ohio St.3d at 133.
 {¶ 25} Appellee has argued that the email messages in late 1998 were a cognizable event that should have put Appellant on notice that she was injured by Appellee's legal representation. However, such a finding would be contrary to the rule enunciated in Allenius, namely that the injury to which the patient/client complains be related to professional services previouslyrendered. The injury to which Appellant now complains, namely the running of the statute of limitations to open an estate, did not exist at the time she wrote the email messages in late 1998. To find that the email messages were a "cognizable event" would put Appellant in the illogical position of being held responsible for discovering an injury that had not yet occurred. Put differently, it would require Appellant to have discovered that the statute of limitations to open an estate on behalf of the decedent had run prior to the date the statute ran. This, obviously, makes no sense.
 {¶ 26} When determining the date of an injury for purposes of determining the start date of the statute of limitations for a legal malpractice action, this Court must make an "inquiry into the particular facts of the action." Hershberger v. Akron CityHosp. (1987), 34 Ohio St.3d 1; see, also, Zimmie,43 Ohio St.3d at 57. The particular facts of the instant appeal reveal that, although Appellant was not completely aware of the extent of her alleged injuries resulting from Appellee's alleged malpractice, she fully believed that she had already "appreciably and actually been damaged" by Appellee's alleged withholding of settlement funds. Zimmie, 43 Ohio St.3d at 58. This belief, along with her statements that she was "taking action" and calling upon the federal government for assistance indicate that she firmly believed Appellee had already engaged in legal malpractice in late 1998. As a result, she should have investigated Appellee's legal representation and pursued potential remedies. See Allenius, 42 Ohio St.3d at 134; see, also, Zimmie, 43 Ohio St.3d at57-58. Had Appellant investigated Appellee's representation in late 1998 as she should have, it is reasonable to assume that she would have discovered that the statute of limitations to open an estate had run on December 25, 1998. She could then have pursued a timely legal malpractice action against Appellee based on his failure to open an estate. Given the particular facts involving the dates and nature of Appellant's email messages to Appellee, along with the timing of the expiration of the statute of limitations to open an estate, we find that the running of the statute of limitations on December 25, 1998 was the date Appellant's alleged injury occurred, and said injury was the "cognizable event" that triggered the statute of limitations pursuant to the Zimmie
test.
 {¶ 27} Comparing the "cognizable event" date of December 25, 1998 to the termination of the attorney-client relationship date of January 29, 1999, the later of the two events is clearly January 29, 1999. Therefore, the statute of limitations for Appellant's claim of legal malpractice began to run on January 29, 1999. As a result, Appellant's March 3, 2000 claim of legal malpractice was not commenced within the one year statute of limitations pursuant to R.C. 2305.11(A) and her claim was time-barred. It follows that Appellee's motion for summary judgment was properly granted. Appellant's sole assignment of error is without merit.
 III {¶ 28} Appellant's sole assignment of error is overruled. The judgment of the trial court is affirmed.
Judgment affirmed.
Carr, P.J., and Slaby, J. concur.
[1] Appellant first filed her claim of legal malpractice on March 3, 2000, which she voluntarily dismissed without prejudice on January 11, 2002. She then re-filed her complaint on December 31, 2002.