JOURNAL ENTRY AND OPINION
{¶ 1} Defendants, Barbara Roman, along with Meyers, Lamanna 
Roman, and Meyers, Roman, Friedberg Lewis, appeal the trial court's denial of their motion for a directed verdict against their former client, plaintiff Shirley Steindler.
 {¶ 2} In August 1999, plaintiff hired defendants to represent her in a dissolution of marriage. In June 2000, client and her spouse entered into a separation agreement, which was later incorporated into their petition for dissolution of marriage. After filing the petition for dissolution of marriage, plaintiff and her spouse entered into two separate addenda, the first in October 2000, the second in January 2001. Several post-dissolution matters then arose and were handled by defendants.
 {¶ 3} In March 2003, plaintiff and defendants corresponded regarding plaintiff's dissatisfaction with defendants' representation and the possibility of plaintiff seeking new counsel. On April 3, 2003, plaintiff called another law firm to discuss her concerns about her case; on April 4, 2003, she sent the same law firm a letter about her case; and, on April 10, 2003, she signed an agreement retaining the law firm as her new counsel.
 {¶ 4} Plaintiff and her spouse did not completely resolve their disagreements until February 2004. On April 7, 2004, plaintiff filed a malpractice claim against defendants. The matter proceeded to a jury trial.
 {¶ 5} At the close of all evidence at trial, defendants filed a motion for a directed verdict in which they argued that either plaintiff's malpractice claim was barred by the one-year statute of limitations or plaintiff had waived her malpractice claim when she settled the dissolution matter. The trial court denied defendants' motion and the case was given to the jury, which returned an $80,000 verdict in plaintiff's favor. Defendants now appeal and present two assignments of error, the first of which follows:
I. THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT[S] IN DENYING APPELLANTS' MOTION FOR DIRECTED VERDICT.
 {¶ 6} Defendants argue that they were entitled to a directed verdict because (1) the client filed her legal malpractice claim more than one year after the attorney-client relationship ended thus beyond the one-year statute of limitations; and (2) the client waived any malpractice claim when she agreed to various settlements throughout the marriage dissolution process.
 {¶ 7} A trial court should grant a motion for directed verdict only when, upon "construing the evidence most strongly in favor of the party against whom the motion is directed, [it] finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party * * *." Civ.R. 50(A)(4); seeCrawford v. Halkovics (1982), 1 Ohio St.3d 184; The LimitedStores, Inc. v. Pan American World Airways, Inc. (1992),65 Ohio St.3d 66.
 {¶ 8} When reviewing a trial court's decision on a motion for directed verdict, this court does not weigh the evidence or test the credibility of witnesses. Instead, the question before this court is whether the evidence was legally sufficient to be submitted to a jury. Because this is a question of law, not fact, we review de novo the trial court's denial of the defendants' motion for directed verdict. Medpartners v. Calfee, Halter,Griswold LLP (2000), 140 Ohio App.3d 612, 615-616 (citations omitted).
Statute of Limitations
 {¶ 9} The statute of limitations for the filing of a legal malpractice claim is one year. R.C. 2305.11(A). The Ohio Supreme Court has ruled that the determination of when the statute of limitations begins to run is guided by the following rules:
Under R.C. 2305.11(A), an action for legal malpractice accrues and the statute of limitations begins to run when there is a cognizable event whereby the client discovers or should have discovered that his injury was related to his attorney's act or non-act and the client is put on notice of a need to pursue his possible remedies against the attorney or when theattorney-client relationship for that particular transactionterminates, whichever occurs later. Zimmie v. Calfee, Halter Griswold (1989), 43 Ohio St.3d 54, citing Omni-Food andFashion, Inc. v. Smith (1988), 38 Ohio St.3d 385,528 N.E.2d 941(emphasis added).
 {¶ 10} In the case at bar, the parties stipulated that the "cognizable event" referred to in the statute occurred more than one year before plaintiff's April 7, 2004, filing of her complaint against defendants. The parties further agree that the attorney-client relationship ended after the cognizable event referred to in the statute. Accordingly, the question of whether the complaint was, as a matter of law, filed after the one-year statute of limitations had expired turned upon whether it was clear as to when, specifically, the attorney-client relationship ended between the parties.
 {¶ 11} "The determination of whether an attorney[-]client relationship has ended is necessarily one of fact, to be decided by the trier of fact." Downey v. Corrigan, Summit App. No. 21785, 2004-Ohio-2510, ¶ 14, citing Sinsky v. Gatien (Aug. 30, 2000), 9th Dist. No. 19795, 2000 Ohio App. LEXIS 3903, at *5, appeal not allowed (2001), 91 Ohio St.3d 1418, 741 N.E.2d 144, citing Mobberly v. Hendricks (1994), 98 Ohio App.3d 839, 843,649 N.E.2d 1247. The question of when the attorney-client relationship was terminated may be taken away from the trier of fact only if "affirmative actions that are patently inconsistent with a continued attorney-client relationship" have been undertaken by either party. Id.
 {¶ 12} In the present case, defendants' attempts to identify an "affirmative action" by plaintiff that terminated the attorney-client relationship fail. First, the initial correspondence, in March 2003, between plaintiff and defendants about the quality of representation did not, as defendants argue, expressly end the attorney-client relationship. To the contrary, plaintiff testified at trial that she told defendants at that time that she could not afford alternate counsel and wanted them "to conclude this business." The plaintiff's testimony thus created a question of fact for the jury.
 {¶ 13} Neither could plaintiff's request for information about filing a grievance against defendants be deemed a conclusive act that terminated her relationship with defendants. The evidence at trial demonstrated that plaintiff never actually filed a grievance with or even opened the envelope containing the information requested from the Ohio Bar Association about the grievance process.
 {¶ 14} Finally, plaintiff's request by phone on April 3, 2003, and by letter dated April 4, 2003, did not function as a termination. In those inquiries, she merely asked another law firm to look at her case and advise her as to whether she had any available options. This request did not function as an express termination of her relationship with defendants. As this court has previously held: "Mere discussions with a second lawyerabout a case, as in the instant case, unbeknownst to the firstlawyer, do not signal the termination of the attorney-clientrelationship with the first lawyer." Feudo v. Pavlik (1988),55 Ohio App.3d 217, 219 (emphasis added).
 {¶ 15} Accordingly, the evidence did not conclusively reveal any affirmative actions by plaintiff or defendants that were "patently inconsistent with" or that expressly terminated the attorney-client relationship prior to plaintiff's signing of an agreement, dated April 10, 2003, retaining another law firm to represent her. There was thus a question of fact to be determined by the jury: Did any actions by plaintiff or defendants prior to April 10, 2003, function as a termination of the attorney-client relationship? This question was properly presented to the jury.
Waiver of Claim
 {¶ 16} Defendants also argue that the motion for directed verdict should have been granted because plaintiff's claims were waived by the various settlements reached throughout the marriage dissolution process. We disagree.
 {¶ 17} A former client is foreclosed from a claim of legal malpractice only when the settlement of the underlying action precludes the client from establishing what would have happened absent the purported negligence. Estate of Callahan v. Allen
(1994), 97 Ohio App.3d 749.
 {¶ 18} Here, plaintiff was able to demonstrate, through testimony and document evidence, that she suffered financial loss — indeed, down to specific dollar amounts — as a direct result of defendants' failure to clarify and enforce the various settlements reached throughout the course of the marriage dissolution. We therefore affirm the trial court's denial of the motion for directed verdict.
 {¶ 19} Accordingly, the assignment of error one is overruled.
 {¶ 20} For their second assignment of error, defendants state: II. THE VERDICT IN FAVOR OF APPELLEE IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 21} In asserting that the jury's verdict was against the weight of the evidence, defendants argue that there was no competent or credible evidence from which the jury could conclude that the attorney-client relationship continued beyond April 4, 2003, and that plaintiff's claim was thus barred by the one-year statute of limitations. In the alternative, defendants argue that competent and credible evidence established that plaintiff waived her claim when she settled the marriage dissolution.
 {¶ 22} "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." C.E. Morris Co. v. Foley Constr. Co.
(1978) 54 Ohio St.2d 279, 280-281, citing Chicago OrnamentalIron Co. v. Rook (1915), 93 Ohio St. 152, 160; Portage MarketsCo. v. George (1924), 111 Ohio St. 775 (paragraph one of the syllabus).
 {¶ 23} In this assignment, defendants' factual assertions and arguments are identical to those made in support of their motion for directed verdict. For the reasons stated above in our ruling affirming the trial court's denial of the motion for directed verdict, we hereby find that the jury's verdict was supported by competent and credible evidence. Therefore, this second assignment of error is overruled.
Judgment accordingly.
It is ordered that appellee recover of appellants her costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Sweeney, P.J., and Rocco, J., concur.