OPINION
{¶ 1} Plaintiff-appellant Lincoln General Insurance Company (referred to as Lincoln General) appeals the Mahoning County Common Pleas Court's grant of summary judgment for defendants-appellees Samuel Pipino, James Wiles, Wiles Doucher, Van Buren Boyle Co., L.P.A. and Wiles, Boyle, Burkholder Bringardner Co., L.P.A. (collectively referred to as the Wiles Firm). The issue in this appeal is what was the cognizable event for Lincoln General's legal malpractice claim against the Wiles Firm. For the reasons stated below, the judgment of the trial court is affirmed.
 STATEMENT OF FACTS AND CASE {¶ 2} Kimberly Withers (Withers) was the Administratrix of her husband's (Alan Withers) estate. She filed a wrongful death action individually and on behalf of the estate against Lincoln General Insurance Company in the Mahoning County Common Pleas Court on January 24, 1997.[1] The Wiles Firm represented Lincoln General in that suit. On December 31, 1997, Withers, on behalf of herself and the estate, settled the claims against Lincoln General for $72,500. She released Lincoln General "from any and every claim, demand, right or cause of action for insurance coverage that could be pursued by her, her heirs, executors, administrators, successor, and assigns." The common pleas case was dismissed by entry on February 3, 1998.
 {¶ 3} In early 2003, Lincoln General consulted with another law firm about the Withers' settlement; it contacted John Pion of Dickie, McCamey Chilcote. James Oberg of Lincoln General sent a letter to Pipino of the Wiles Firm requesting that Pipino forward a full and complete copy of the Withers' file to Pion. 03/19/03 Letter.
 {¶ 4} Pion also sent a letter to Pipino informing Pipino that Pion was retained to represent Lincoln General regarding the estate of Alan Withers. Pion also requested that Pipino forward the Withers' file to him. 03/20/03 Letter. Furthermore, Pion informed Pipino that:
 {¶ 5} "Lincoln was recently put on notice of a claim under the theory that the failure of Lincoln to secure settlement of the wrongful death claim and/or to have same approved by the probate court, was violative of the wrongful death statute and, accordingly, the settlement is then null and void." 03/20/2003 Letter. *Page 3 
 {¶ 6} Pion's request for the file was not fulfilled, thus Pion sent Pipino a second letter requesting the Withers' file be promptly forwarded. 04/25/03 Letter. The Wiles Firm complied with the request and on May 12, 2003, forwarded the file to Pion.
 {¶ 7} The record contains one last letter from Pion to Pipino which is dated November 6, 2003. In this letter, Pion advises Pipino to put his "EO carrier" on notice concerning the problems in the Withers' estate settlement.
 {¶ 8} Following these letters, on December 15, 2003, a hearing occurred in probate court regarding the status of Alan Withers' estate. At the hearing, the probate court discovered that the wrongful death claim in the common pleas court had been settled. The probate court did not know of the settlement because Withers never requested the probate court's approval for the settlement as was required by R.C. 2125.02(C). Accordingly, since its approval was never sought or obtained, the probate court concluded that the settlement was "of no consequence" and "[t]he estate thus has and shall pursue its chose in action for the wrongful death of the Decedent and report further to this Court." 12/18/03 J.E.
 {¶ 9} Based upon that holding, on January 14, 2004, Withers filed a Civ.R. 60(B) motion in the common pleas court asking it to vacate the December 31, 1997 and February 3, 1998 journal entries settling and dismissing the wrongful death action. Lincoln General opposed that motion. The common pleas court overruled the motion on February 12, 2004. Withers appealed that decision.
 {¶ 10} On appeal, this court held that wrongful death settlements are void when the probate court's approval is not sought or obtained.Withers v. Nationwide Ins. Co., 7th Dist. No. 04MA39, 2004-Ohio-6379
at ¶ 8-13. Thus, we concluded the common pleas court erred by failing to void the judgments. Id. ¶ 20.
 {¶ 11} Pursuant to our decision, the wrongful death case was reinstated. On June 16, 2005, the common pleas court held that "plaintiff [Withers] is entitled to uninsured motorist coverage in the amount of $1,000,000 from Defendant [Lincoln General]."
 {¶ 12} On September 12, 2005, Lincoln General filed a complaint against the Wiles Firm alleging legal malpractice. Specifically, it claimed that the Wiles Firm failed to ensure that the underlying claims were settled with probate court approval and thereby exposed Lincoln General to further liability. The Wiles Firm answered the complaint and defended by claiming the statute of limitation had expired. The Wiles *Page 4 
Firm also filed a motion for summary judgment asserting that the statute of limitations had expired. Lincoln General opposed the motion. The trial court granted summary judgment for the Wiles Firm. It stated:
 {¶ 13} "Construing the evidence in a light favorable to Plaintiff, reasonable minds can come to but one conclusion and that is the Cognizable Event occurred as early as March 19, 2003, which was the date of the letter from Plaintiff to Defendants requesting that Defendants' entire file be forwarded to new Counsel, and as late as December 15, 2003, when the probate court issued an adverse ruling concerning the failure to obtain Probate Court approval of the settlement." 07/19/2006 J.E.
 {¶ 14} Following that reasoning, the court found that the complaint was not filed within one year of the cognizable event, and thus, the statute of limitations had expired. Lincoln General appeals that decision.
 FIRST ASSIGNMENT OF ERROR {¶ 15} "WHETHER THE TRIAL COURT ERRED IN SUSTAINING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND IN FINDING THAT A COGNIZABLE EVENT OCCURRED AS EARLY AS MARCH 19, 2003, OR AS LATE AS DECEMBER 15, 2003, BOTH OF WHICH OCCURRED MORE THAN ONE YEAR PRIOR TO THE FILING OF THE COMPLAINT FOR THE LEGAL MALPRACTICE IN THIS CASE ON SEPTEMBER 15, 2005, WHEN, IN FACT, THE EARLIEST APPLICABLE COGNIZABLE EVEN OCCURRED ON NOVEMBER 26, 2004, WHEN THE COURT OF APPEALS FOR THE SEVENTH DISTRICT REVERSED THE TRIAL COURT'S DECISION IN THE UNDERLYING NEGLIGENCE CASE?"
 {¶ 16} An appellate court reviews a trial court's decision on a motion for summary judgment de novo. Bonacorsi v. Wheeling Lake Erie Ry.Co., 95 Ohio St.3d 314, 2002-Ohio-2220, at ¶ 24. Summary judgment is properly granted when: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made. Harless v. Willis Day Warehousing Co. (1978),54 Ohio St.2d 64, 66; Civ.R. 56(C).
 {¶ 17} The statute of limitations for the filing of a legal malpractice claim is one year. R.C. 2305.11(A). "Under R.C. 2305.11(A), an action for legal malpractice accrues and the statute of limitations begins to run when there is a cognizable event *Page 5 
whereby the client discovers or should have discovered that his injury was related to his attorney's act or non-act and the client is put on notice of a need to pursue his possible remedies against his attorney or when the attorney client relationship for that particular transaction terminates, whichever occurs later." Zimmie v. Calfee, Halter Griswold (1989), 43 Ohio St.3d 54, citing Omni-Food and Fashion, Inc. v.Smith (1988), 38 Ohio St.3d 385.
 {¶ 18} The above test gives two dates to look for when determining when the statute of limitations begins to run. The first one is the date of the cognizable event. The second is the date of when the attorney-client relationship terminates. Whichever of those two dates is later, then the complaint for legal malpractice must be filed within one year of that date.
 Cognizable Event {¶ 19} Lincoln General argues that this court's opinion inWithers, which was released on November 26, 2004, is the cognizable event which started the running of the statute of limitations. According to it, since the complaint for legal malpractice was filed within one year of that date, the statute of limitations had not expired.
 {¶ 20} The Wiles Firm, on the other hand, agrees with the trial court's determination that the cognizable event occurred as early as March 2003 and as late as December 2003. According to these dates, the complaint filed in September 2005 clearly was not filed within the one year statute of limitations. Thus, the issue presented to this court for determination is what constituted the cognizable event.
 {¶ 21} A "cognizable event" is an event that puts a reasonable person on notice that "a questionable legal practice may have occurred."Cook v. Caruso, 6th Dist. No. L-05-1208, 2006-Ohio-1982, ¶ 14, citingZimmie, 43 Ohio St.3d 54. However, an injured person does not need to "be aware of the full extent of the injury before there is a cognizable event." Cook, 2006-Ohio-1982 at ¶ 14, citing Zimmie, 43 Ohio St.3d 54. Rather, it is enough that some noteworthy event, i.e. the cognizable event, has occurred which does or should have alerted a reasonable person that his attorney may have committed legal malpractice.Cook, 2006-Ohio-1982 at ¶ 4, citing Zimmie, 43 Ohio St.3d 54. "Knowledge of a potential problem starts the statute to run, even when one does not know all the details." Halliwell v. Bruner (Dec. 14, 2000), 8th Dist. Nos. 76933, 77487. "Consulting with an attorney itself indicates a cognizable event." Id. *Page 6 
 {¶ 22} From the attachments to the Wiles Firm's motion for summary judgment, it is clear that as early as March 20, 2003, Lincoln General had become aware that the wrongful death settlement might be null and void. It is Lincoln General's attorney, who had been recently retained, that indicated this in a letter to the Wiles Firm. Furthermore, in a letter dated November 6, 2003, Lincoln General informed the Wiles Firm that it should put its "EO carrier" (malpractice insurance carrier) on notice regarding the Withers matter.
 {¶ 23} These letters clearly indicate that Lincoln General was on notice of the questionable legal practice of failing to get probate court approval for the wrongful death settlement. The letters show that there is clear knowledge of a potential problem. Furthermore, they show that Lincoln General was already consulting with another attorney, Attorney Pion, about the possible problem with the settlement.
 {¶ 24} Moreover, when these letters are taken in conjunction with the probate court's ruling in December 2003, that the estate was still entitled to pursue damages from Lincoln General, it is clear that they constitute a cognizable event. Lincoln General argues that it was not a party to the probate matter. Thus, possibly it did not know about the probate court's ruling in December 2003. However, it undoubtedly was aware of that ruling in mid-January 2004. On January 14, 2004, Withers filed a motion for Civ.R. 60(B) in the common pleas court. Her request for vacation was based upon the probate court's reasoning. Lincoln General opposed that motion. Thus, as the January 2004 motion was tied-in with the probate court's determination, it cannot be concluded that as of January 2004, Lincoln General did not know about the probate court's ruling. Thus, we must conclude that at the latest, the cognizable event occurred in January 2004.
 {¶ 25} Admittedly, if this court had decided in Withers that the settlement was not void, then there would not have been malpractice. Furthermore, when Lincoln General was aware of the potential problem with the settlement, the case was just being appealed and by the time their statute of limitations had run, there still was not a final resolution by this court. However, the Ohio Supreme Court has specifically declined to adopt a rule that one is entitled to exhaust all his appellate remedies before the statute of limitation begins to run. Zimmie, 43 Ohio St.3d at 58-59.
 {¶ 26} In Zimmie, Justice Sweeney wrote a dissent. The dissent references a situation as the one above and questions what a trial court hearing the malpractice *Page 7 
complaint would do. Id. at 60. Would it dismiss the malpractice action because it is unknown whether malpractice occurred or would it hold it in abeyance pending appeal? Id. The majority addressed that argument by stating:
 {¶ 27} "In order to avoid needless litigation, if Zimmie had timely filed the malpractice action, the trial court could have been requested to stay this malpractice action until there was a final judgment from the appellate courts concerning the validity of the antenuptial agreement. The stay would eliminate any problems created by the possibility that the court of appeals or this court would reverse the trial court judgment, since such a reversal would probably result in Zimmie having no legal malpractice action against appellees." Id. at 59.
 {¶ 28} Thus, a final resolution of the issue by this court does not necessarily constitute the cognizable event.
 {¶ 29} We are aware that when counsel for Lincoln General wrote the above referenced letters there was no adverse ruling against them. Likewise, we acknowledge that the probate court's December 2003 ruling that the settlement was invalid because it had not approved the settlement was not a binding order on Lincoln General. Equally, we recognize that the common pleas court did not vacate the settlement when Withers moved for vacation. Thus, there was no binding adverse ruling against Lincoln General that voided the settlement until this court's decision in Withers.
 {¶ 30} However, when we determine when there is a cognizable event, we look to an event that puts a reasonable person on notice that "a questionable legal practice may have occurred." Cook, 6th Dist. No. L-05-1208, 2006-Ohio-1982, ¶ 14, citing Zimmie, 43 Ohio St.3d 54. Here, there is a probate court ruling in the Withers estate that Lincoln General knew of, although not binding on them, that clearly indicated that the Withers settlement was not valid because there was no prior probate court approval as is required by R.C. 2125.02(C). Furthermore, even prior to that probate court's decision, there are letters from Lincoln General's current attorney, Pion, to its former attorney, Pipino, indicating that Lincoln General has been put on notice that the Withers settlement might be null and void for failing to get prior probate court approval. In fact, one of the letters informs Pipino to put his malpractice carrier on notice of a possible claim. When the letters are taken in combination with the probate court's ruling, we find that a reasonable person at that point would be on notice that a *Page 8 
questionable legal practice may have occurred. Our decision was not the first awareness of the potential problem; the letters and the probate court's decision were. If there had been no probate court ruling and no letters indicating notice of the possible claim, then we agree that our decision would have been the cognizable event. However, that is not the case here. Furthermore, we must note that Lincoln General did not need to "be aware of the full extent of the injury before there is a cognizable event." Cook, 2006-Ohio-1982 at ¶ 14, citing Zimmie,43 Ohio St.3d 54. Consequently, at the latest, the cognizable event occurred in January 2004.
 {¶ 31} Therefore, given that the complaint for legal malpractice was filed in September 2005, it was not filed within one year of the cognizable event. However, that does not necessarily mean that the statute of limitations had expired. As explained above, Zimmie states that the statute of limitations expires one year from the date of the cognizable event or one year from when the attorney client relationship for that particular transaction terminates, whichever one occurs later.Zimmie, 43 Ohio St.3d 54. Thus our analysis turns to when the attorney-client relationship terminated.
 Termination of Attorney Client Relationship {¶ 32} Letters attached to the Wiles Firm's motion for summary judgment indicate that the attorney-client relationship terminated at the latest sometime between March 20, 2003 and May 12, 2003. Attorney Pipino received a letter dated March 20, 2003 from Attorney Pion indicating that Lincoln General had hired him and that he requested the entire file on Withers be forwarded to him. This same sentiment was conveyed in a letter dated April 25, 2003. In a letter dated May 12, 2003, the Wiles Firm indicated that it had forwarded the file to Attorney Pion.
 {¶ 33} Having a new attorney request the relevant file from the former attorney is a clear signal that the client-relationship had terminated. Such action is patently inconsistent with a continued attorney-client relationship. Steindler v. Meyers, Lamanna Roman, 8th Dist. No. 86852,2006-Ohio-4097, ¶ 11. It is an unmistakable indicator that the new attorney is now representing the client.
 {¶ 34} The time span for the termination of the attorney-client relationship occurred before the cognizable event. Thus, for statute of limitations purposes in this case, we use the date of the cognizable event to determine if the complaint was filed within the statute of limitations. Zimmie, 43 Ohio St.3d 54.
 Conclusion *Page 9 {¶ 35} The cognizable event in this case occurred at the latest in January 2004, when it is clear that Lincoln General would have been aware of the probate court's ruling that the settlement had been executed without prior permission, and as such, it did not preclude the estate from seeking wrongful death damages from Lincoln General. This was after Lincoln General's attorney wrote letters to the Wiles Firm indicating that there was a potential problem with the settlement it executed for Lincoln General in the Withers case and instructed the Wiles Firm to put their malpractice insurance carrier on notice of the potential claim. The complaint for legal malpractice was filed in September 2005. This is clearly not within one year of the cognizable event.
 {¶ 36} For the foregoing reasons, the judgment of the trial court is hereby affirmed.
DeGenaro, P.J., Donofrio, J., concurs.
[1] The complaint was also filed against Nationwide Insurance Company. However, this appeal does not deal with Nationwide, thus any facts regarding Nationwide are not dealt with unless they are relevant. *Page 1