[Cite as *Virginia Homes, Ltd. v. Goldman*, 2014-Ohio-1750.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Virginia Homes, Ltd., | : | |
| Plaintiff-Appellant, | : | No. 13AP-1012 |
| | | (C.P.C. No. 10CV-9377) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| William A. Goldman, Esq. et al., | : | |
| Defendants-Appellees. | : | |

D E C I S I O N

Rendered on April 24, 2014

*Cooper & Elliott, LLC, Charles H. Cooper, Jr.* and *Rex H. Elliott*, for appellant.

*Lane, Alton & Horst, LCC, Rick E. Marsh* and *Monica L. Waller,* for appellees.

APPEAL from the Franklin County Court of Common Pleas

LUPER SCHUSTER, J.

{¶ 1} Plaintiff-appellant, Virginia Homes, Ltd., appeals from a decision and entry of the Franklin County Court of Common Pleas granting the motion for summary judgment of defendants-appellees attorney William A. Goldman individually and his law firm Goldman & Braunstein, LLP. Because the applicable statute of limitations bars appellant's claim, we affirm.

I. Facts and Procedural History

{¶ 2} In June 2000, appellant hired appellees as legal counsel to help arrange the annexation of 46 acres of undeveloped land owned by appellant from Violet Township to the city of Pickerington. Goldman drafted a petition for annexation which appellant,

through its Vice President David C. Ruma, signed on September 27, 2001.  On October 1, 2001, appellant entered into a pre-annexation agreement with the city of Pickerington.

{¶ 3}  On October 25, 2001, Goldman filed a second petition to annex land from Violet Township to the city of Pickerington.  This second petition was to annex 362 acres of land, including the 46 acres belonging to appellant.  Appellant alleges it never signed the second petition; instead, appellant alleges Goldman removed the signature page from the first petition and attached it to the second petition.  Appellant then found itself a party to a multi-owner annexation petition rather than a single-owner petition.  Although appellant alleges the signature was not valid, it is undisputed that appellant received a copy of the joint annexation petition to which it was a party on November 6, 2001.

{¶ 4}  On April 25, 2002, appellant met with attorneys at the law firm of Smith & Hale, without Goldman's knowledge, to review the pre-annexation agreement originally prepared and negotiated by Goldman.  Although there was never a fee agreement or contract for representation, from that point on, Smith & Hale billed appellant regularly for legal services.

{¶ 5}  Appellant grew frustrated with appellees' legal representation.  On June 14, 2002, appellant sent a letter to Goldman asking why he was not responding to appellant's phone calls and stating "[e]ither this situation must change immediately, or else I will certainly not be paying you any additional money, and I will expect that you will pay for any damage you may have caused to my project."  (R. 138, exhibit B.)  Goldman responded with a letter on June 14, 2002 indicating he wanted "to continue representing" appellant. (R. 65, exhibit No. 34.)

{¶ 6}  On July 30, 2002, the Fairfield County Commissioners denied the second annexation petition.  Appellant sent another letter to Goldman on August 1, 2002 stating it was "counting on [Goldman's] representation" for certain issues with the annexation process.  (R. 138, exhibit C.)  That same day, Ruma and Goldman spoke by telephone.  According to Goldman, the parties agreed at that point that Goldman would no longer represent appellant in the annexation.  Goldman memorialized this phone call with a handwritten note to himself, but he never sent any written confirmation of the end of the relationship to appellant.  Appellant denies the parties agreed to terminate the attorney-client relationship on that day.  It is undisputed, however, that the parties had no further

contact after August 1, 2002.  From that time on, Smith & Hale continued to actively represent appellant in the annexation matter.

{¶ 7}  The Fairfield County Commissioners' denial of the second annexation petition resulted in a legal and regulatory fight delaying the annexation and zoning of the land.  On March 31, 2003, appellant, through its representation from Smith & Hale, filed a motion to intervene in the Fairfield County Court of Common Pleas as a party to oppose the annexation of the property by the city of Pickerington.   Appellees were not listed as co-counsel on this motion.  On June 20, 2003, appellant filed a brief in the Fairfield County Court of Common Pleas attempting to invalidate the annexation petition due to the allegedly invalid signature page.  Again, appellant filed this brief through its attorneys at Smith & Hale and did not list appellees as co-counsel.

{¶ 8}  On August 1, 2003, the city of Pickerington enacted a building moratorium, and additional ballot initiatives threatened to contradict terms of appellant's pre-annexation agreement with the city of Pickerington.  Despite appellant's opposition, the Fairfield County Court of Common Pleas reversed the county commissioners' denial of the annexation petition.  Appellant appealed that decision through its attorneys at Smith & Hale.  The parties ultimately reached a resolution while the appeal was pending.

{¶ 9}  On January 15, 2004, appellant learned Goldman provided representation to another property owner that was a party to the same joint annexation petition as appellant.

{¶ 10} On December 3, 2004, appellants filed a complaint against Goldman individually and Goldman's law firm by the doctrine of respondeat superior alleging professional negligence stemming from appellees' representation of appellant in the land annexation matter.  Appellant alleged it learned on December 4, 2003 of appellees' intent to withhold the first petition and to instead include appellant in the second petition.  Appellant further alleges that it did not learn of appellees' simultaneous representation of the other property owners until January 15, 2004.  The case proceeded for some time before the trial court dismissed the case without prejudice on September 23, 2009, allowing appellant to refile its complaint.

{¶ 11} On June 23, 2010, appellant refiled its complaint against appellees, alleging that appellees breached the duty they owed to appellant by failing to disclose conflicts of

interest and compromising appellant's interests in order to serve the interests of appellees' other clients. Appellant's complaint further alleged appellees failed to properly advise appellant in connection with the annexation of appellant's property, and appellant alleged it suffered injury as a direct and proximate result of appellees' professional negligence.

{¶ 12} On February 29, 2012, appellees filed a motion for summary judgment claiming there were no genuine issues of material fact as to whether appellees had breached any standard of care required of attorneys to their clients. Appellant responded to the summary judgment motion with a memorandum in opposition filed March 30, 2012. In its memorandum in opposition, appellant asserted it had presented sufficient evidence to create a genuine issue of material fact as to whether appellees breached a standard of care and asked the court to deny appellees' motion. In a December 11, 2012 decision and entry, the trial court denied appellees' motion for summary judgment, finding Goldman failed to satisfy his initial burden of demonstrating the absence of any genuine issue of material fact as to whether Goldman had a conflict of interest which required him to disclose the conflict and obtain written informed consent before proceeding with the representation.

{¶ 13} Subsequently, on June 28, 2013, appellees filed a second motion for summary judgment, this time asserting appellees are entitled to judgment as a matter of law because the statute of limitations bars appellant's claims. Appellant responded on July 22, 2013 with a memorandum in opposition, arguing there remained a genuine issue of material fact as to when the attorney-client relationship ended and as to when the cognizable events occurred.

{¶ 14} In a November 15, 2013 decision and entry, the trial court granted appellees' second motion for summary judgment, agreeing with appellees that appellant filed its initial complaint outside the applicable one-year statute of limitations and thus appellant's refiled complaint similarly was time-barred. Appellant timely appeals.

## II. Assignment of Error

{¶ 15} Appellant assigns the following assignment of error for our review:
> The trial court erred when it granted summary judgment in favor of [appellees] and found there was no genuine issue of material fact as to whether [appellant's] claim was outside the applicable statute of limitations.

### III. Standard of Review and Applicable Law

{¶ 16} Appellant's sole assignment of error challenges the trial court's disposition of appellees' motion for summary judgment. An appellate court reviews summary judgment under a de novo standard. *Coventry Twp. v. Ecker*, 101 Ohio App.3d 38, 41 (9th Dist.1995); *Koos v. Cent. Ohio Cellular, Inc.*, 94 Ohio App.3d 579, 588 (8th Dist.1994). Summary judgment is appropriate only when the moving party demonstrates (1) no genuine issue of material fact exists, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds could come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence most strongly construed in its favor. Civ.R. 56(C); *State ex rel. Grady v. State Emp. Relations Bd.*, 78 Ohio St.3d 181, 183 (1997).

{¶ 17} Pursuant to Civ.R. 56(C), the moving party bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record demonstrating the absence of a material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). However, the moving party cannot discharge its initial burden under this rule with a conclusory assertion that the non-moving party has no evidence to prove its case; the moving party must specifically point to evidence of the type listed in Civ.R. 56(C) affirmatively demonstrating that the non-moving party has no evidence to support the non-moving party's claims. *Id.*; *Vahila v. Hall*, 77 Ohio St.3d 421, 429 (1997). Once the moving party discharges its initial burden, summary judgment is appropriate if the non-moving party does not respond, by affidavit or as otherwise provided in Civ.R. 56, with specific facts showing that a genuine issue exists for trial. *Dresher* at 293; *Vahila* at 430; Civ.R. 56(E).

### IV. Discussion

{¶ 18} In its sole assignment of error, appellant asserts the trial court erred in concluding the statute of limitations time-barred its legal malpractice action against appellees. More specifically, appellant argues there existed genuine issues of material fact as to both when the attorney-client relationship terminated and when the cognizable event occurred.

{¶ 19} Pursuant to R.C. 2305.11(A), the statute of limitations for a legal malpractice action is one year. The statute begins to run "when there is a cognizable event whereby the client discovers or should have discovered that his injury was related to his attorney's act or non-act and the client is put on notice of a need to pursue his possible remedies against the attorney or when the attorney-client relationship for that particular transaction or undertaking terminates, whichever occurs later." *Zimmie v. Calfee, Halter & Griswold*, 43 Ohio St.3d 54, 58 (1989). Thus, to determine whether the statute of limitations bars a legal malpractice claim, we must make two factual determinations: "(1) When should the client have known that he or she may have an injury caused by his or her attorney? and (2) When did the attorney-client relationship terminate? The latter of these two dates is the date that starts the running of the statute of limitations." *Smith v. Conley*, 109 Ohio St.3d 141, 2006-Ohio-2035, ¶ 4.

**A. Cognizable Event**

{¶ 20} Pursuant to *Zimmie*, we first look to when there was a "cognizable" event at which time appellant first discovered or should have discovered appellees' alleged legal malpractice.

{¶ 21} "A 'cognizable event' is an event sufficient to alert a reasonable person that his attorney has committed an improper act in the course of legal representation." *Asente v. Gargano,* 10th Dist. No. 04AP-278, 2004-Ohio-5069, ¶ 14, citing *Spencer v. McGill*, 87 Ohio App.3d 267, 278 (8th Dist.1993). "The focus should be on what the client was aware of and not an extrinsic judicial determination." *Id.*, quoting *McDade v. Spencer*, 75 Ohio App.3d 639, 643 (10th Dist.1991). The "cognizable event" puts the plaintiff on notice to investigate the facts and circumstances relevant to his or her claim in order to pursue possible remedies, and the plaintiff need not have discovered all of the relevant facts necessary to file a claim in order to trigger the statute of limitations. *Flowers v. Walker*, 63 Ohio St.3d 546, 549 (1992). The plaintiff need not be aware of the full extent of the injury before there is a cognizable event. *Zimmie* at 58. Rather, it is enough that some noteworthy event, the cognizable event, has occurred that does or should alert a reasonable person that a questionable legal practice may have occurred. *Id.*

{¶ 22} In its complaint, appellant avers Goldman committed legal malpractice "by failing to disclose their conflicts of interest and compromising [appellant's] interests in

order to serve the interests of other clients, and by failing to properly advise [appellant] in connection with the annexation of [appellant's] property."  (R. 3, at 4.)  In its memo in opposition to appellees' second motion for summary judgment, appellant explains that it only signed a single-owner petition for annexation, but somehow the signature page from the single owner petition was detached and affixed to the multi-owner petition.  Appellant summarizes its theory of events by stating "[t]his sleight-of-hand by [appellant's] agent, William Goldman, is part of what lies at the core of [appellant's] claim: [appellees] failed to inform [appellant] of the consequence of proceeding under a single owner, 46-acre annexation petition versus a multi-owner, 362-acre annexation petition."  (R. 138, at 3.)  Appellant further explains the harm it suffered by stating that "[b]ecause Goldman failed to explain the ramifications to [appellant], so that [appellant] could make an informed decision, [appellant] ended up mired in a multi-owner, 362-acre annexation petition from which it could not escape."  (R. 138, at 4.)

{¶ 23} Thus, based on appellant's own characterization of the events, it was Goldman's handling of the annexation petition that was the root of appellant's dissatisfaction with Goldman's representation.  To the extent appellant suggests its injury stems from being in a multi-owner annexation petition rather than a single-owner annexation petition, it is undisputed that appellant had a copy of the multi-owner annexation petition by November 6, 2001, so appellant should have been on notice at that time to investigate how it became a party to a multi-owner annexation petition.

{¶ 24} If the simple discovery of the multi-owner petition was not enough to trigger an inquiry, certainly learning of the harm associated with that multi-owner petition should have put appellant on notice that the harm was related to its attorney's act.  Pursuant to its supplemental responses to appellees' first set of interrogatories, appellant asserts it suffered damage when it was unable to sell the property or develop it in a timely fashion because of the ongoing annexation process, citing two unsuccessful attempted sales of the property, the later of which occurred in August 2002.  Thus, based on appellant's own version of the facts, it knew of the harm more than one year before it filed its initial complaint.  This was a cognizable event that should have put appellant on notice that its attorney may have committed malpractice.  As the trial court noted, appellant's June 14, 2002 letter to Goldman in which appellant stated Goldman was

"certainly aware of the potential problems that the proposed ordinance in Pickerington could cause to [appellant's] project" and that appellant "expect[s] that [Goldman] will pay for any damage [Goldman] may have caused to [appellant's] project" demonstrates appellant knew that its potential injury possibly stemmed from Goldman's act or non-act. (R. 138, exhibit B.)

{¶ 25} Even if the inability to sell the property in August 2002 was not the cognizable event, when appellant actively sought to defeat the annexation through the courts in its March 31, 2003 motion to intervene in the appeal of the annexation petition and its June 20, 2003 brief arguing the annexation petition should be denied, it had acute knowledge that it was "mired in a multi-owner, 362-acre annexation petition from which it could not escape."  (R. 138, at 4.)  Appellant filed both of these pleadings through its new counsel and not through appellees.  It was also the June 20, 2003 brief in which appellant stated it had learned that its signature to the multi-owner petition was invalid, and learning of the alleged switched signature was enough to put appellant on notice that its attorney may have committed malpractice.  Thus, even construing the facts in the light most favorable to appellant, the cognizable event occurred, at the very latest, in June 2003, more than one year before appellant filed suit on December 3, 2004.

{¶ 26} Appellant concedes it had this knowledge more than one year before it filed suit on December 3, 2004, but it urges the court that the actual cognizable event occurred on January 15, 2004, as that is the day appellant learned Goldman had represented other landowners involved in the joint petition.  According to appellant, it was not until appellant had actual knowledge of the alleged conflict of interest that the statute of limitations began to run.  We disagree.  Though learning of the alleged conflict may provide further explanation of the harm, a legal malpractice plaintiff need not be aware of the full extent of the injury before the cognizable event occurs.  *Zimmie* at 58.

{¶ 27} Appellant also suggests this court should adopt a "course of conduct" approach to legal malpractice claims in which earlier alleged acts of malpractice would not be time-barred if "the last act alleged is part of an ongoing pattern * * * and occurs within the filing period." *See Curry v. U.S. Postal Serv.*, 583 F.Supp. 334, 342 (S.D.Ohio 1984).  Appellant cannot point to any authority in this state that extends the continuing violations theory to claims of legal malpractice, and we decline to do so here.

{¶ 28} Based on the foregoing, we conclude reasonable minds could only come to but one conclusion that the cognizable event occurred more than one year before December 3, 2004, the date appellant filed its initial complaint.

**B. Termination of Attorney-Client Relationship**

{¶ 29} Because the cognizable event occurred more than one year before appellant filed its complaint, we must next determine whether the attorney-client relationship extended past that point as, pursuant to *Zimmie*, it is the later of the two events that begins the running of the statute of limitations. *Smith* at ¶ 4.

{¶ 30} For purposes of determining when an attorney-client relationship terminates such that the statute of limitations for a legal malpractice action begins to run, we look to the end of the attorney-client relationship for that particular matter. "The determination of when the attorney-client relationship *for a particular transaction* terminates is a question of fact." (Emphasis added.) *Boggs v. Baum*, 10th Dist. No. 10AP-864, 2011-Ohio-2489, ¶ 18, citing *Omni-Food & Fashion, Inc. v. Smith*, 38 Ohio St.3d 385, 388 (1988). The question of when the attorney-client relationship terminated may be taken away from the trier of fact, however, "if 'affirmative actions that are patently inconsistent with the continued attorney-client relationship' have been undertaken by either party." *Id.*, quoting *Steindler v. Meyers, Lamanna & Roman*, 8th Dist. No. 86852, 2006-Ohio-4097, ¶ 11, citing *Downey v. Corrigan*, 9th Dist. No. 21785, 2004-Ohio-2510. Where the evidence is clear and unambiguous as to when the attorney-client relationship terminates for a particular transaction so that reasonable minds can come to but one conclusion from that evidence, the matter may be decided as a matter of law. *Id.*, citing *Trombley v. Calamunci, Joelson, Manore, Farah & Silvers, L.L.P.*, 6th Dist. No. L-04-1138, 2005-Ohio-2105, ¶ 43.

{¶ 31} "Generally, the attorney-client relationship is consensual, subject to termination by acts of either party." *Columbus Credit Co. v. Evans*, 82 Ohio App.3d 798, 804 (10th Dist.1992). "Conduct which dissolves the essential mutual confidence between attorney and client signals the termination of the attorney-client relationship." *DiSabato v. Thomas M. Tyack & Assoc. Co., L.P.A.*, 10th Dist. No. 98AP-1282 (Sept. 14, 1999), citing *Brown v. Johnstone*, 5 Ohio App.3d 165, 166-67 (9th Dist.1982). "An explicit

statement terminating the relationship is not necessary." *Triplett v. Benton*, 10th Dist. No. 03AP-342, 2003-Ohio-5583, ¶ 13, citing *Brown* at 166-67.

{¶ 32} Appellant contends the parties' attorney-client relationship was ongoing up until it filed its malpractice complaint on December 3, 2004. Appellant cites the affidavit testimony of Ruma, appellant's vice president, in which Ruma stated appellant "did not terminate its relationship with Mr. Goldman or his firm until filing this lawsuit" and "[a]t no time before the lawsuit was filed did Mr. Goldman or his firm ever tell [appellant] that our attorney-client relationship had ended." (R. 138, exhibit A.) According to appellant, there is Civ.R. 56 evidence creating an issue of fact as to when the relationship terminated.

{¶ 33} Even if we accept as true appellant's statement in the Ruma affidavit that neither party ever explicitly stated the relationship was over, such an explicit statement is not necessary. *Triplett* at ¶ 13. Instead, we can look to the conduct of the parties to determine the end of the relationship. Critically, we look to appellant's retention of new legal counsel from Smith & Hale. Retaining another attorney to file a suit regarding the same subject matter is an affirmative act demonstrating to a reasonable person that the attorney-client relationship had ended. *DiSabato*, citing *Brown*. *See also Asente* at ¶ 13.

{¶ 34} Here, appellant hired attorneys from Smith & Hale in April 2002. Appellant argues it hired Smith & Hale as supplemental representation and not to replace appellees. However, after August 1, 2002, appellant did not advise Goldman of the work Smith & Hale performed for appellant, and appellant continued to attend meetings regarding the annexation with Smith & Hale but did not advise Goldman of those meetings. Further, appellant's agent, Ruma, stated that appellant no longer believed Goldman performed work for appellant after November 2002. On March 31, 2003, Smith & Hale filed a motion to intervene on behalf of appellant in the Fairfield County action involving the annexation petition. The annexation petition was the same reason appellant had hired appellees, only now appellant sought the opposite outcome of what it had originally retained appellees to procure. Further, Smith & Hale filed a brief on June 20, 2003 alleging appellant's signature on the annexation petition was not valid and sought to invalidate the petition. Not only is the annexation petition the same subject matter for which appellant had initially hired appellees, but now appellant, through its new counsel,

was actively seeking to extricate itself from the annexation petition. Appellant did not list appellees as co-counsel on either the March 31, 2003 motion or the June 20, 2003 brief.

{¶ 35} Appellant attempts to distinguish between legal representation for the initial preparation of the annexation petition and legal representation for the court case involving the appeal from the Fairfield County Commissioners' denial of the petition. According to appellant, the matters it hired Smith & Hale to handle were not "the same subject matter" as that for which it had retained appellees. We do not agree, nor do we find that reasonable minds could come to any conclusion other than that both appellees and Smith & Hale were hired to assist appellant with "the same subject matter."

{¶ 36} Even if we were to agree with appellant that the preparation of the annexation petition was an entirely separate matter from the litigation opposing the annexation petition, the inquiry for purposes of the statute of limitations is when the attorney-client relationship ended for the particular transaction. Indeed, even "continued 'general' representation" does not operate to toll the statute of limitations and instead courts must look to "acts of malpractice relating solely to particular undertakings or transactions" to determine the end of the attorney-client relationship for statute of limitations purposes. *Boggs* at ¶ 22, citing *Omni-Food & Fashion* at 387. By appellant's own admission, by November 2002, appellant no longer believed Goldman was performing any work for appellant on the annexation matter. Beyond that time, the Civ.R. 56 evidence indicates the parties had no further contact, appellees did not perform any further legal services for appellant, appellant did not pay appellees for any services, and appellant did not consult with appellee regarding the annexation petition, nor did appellant ask its new counsel at Smith & Hale to keep appellees advised of the status of Smith & Hale's efforts with the annexation. *See Ruckman v. Zacks Law Group LLC*, 10th Dist. No. 07AP-723, 2008-Ohio-1108, ¶ 20-22 (finding the trial court appropriately granted summary judgment where, even though the plaintiff believed the representation would continue, the parties had no contact past a certain point and the plaintiff proceeded to represent herself pro se in the litigation, and thus the attorney-client relationship had terminated for statute of limitations purposes).

{¶ 37} Because the Civ.R. 56 evidence clearly and unambiguously demonstrates the attorney-client relationship ended, at the very latest, June 30, 2003, we find that

reasonable minds could only come to the conclusion that the attorney-client relationship had ended, at the very latest, on that date.

{¶ 38} Both the cognizable event and the termination of the attorney-client relationship occurred more than one year before appellant filed its complaint. Accordingly, appellant's legal malpractice claim is time-barred by the one-year limitations period in R.C. 2305.11(A) and we overrule appellant's sole assignment of error.

## V. Conclusion

{¶ 39} Having determined appellant's legal malpractice cause of action accrued more than one year before appellant commenced this action, appellant's action is time-barred and appellees were entitled to summary judgment in their favor. Accordingly, the appellant's single assignment of error is overruled and we affirm the decision of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

SADLER, P.J., and CONNOR, J., concur.